

FILED

AUG 17 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA



IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

UNITED STATES OF AMERICA,

v.                                         **CRIMINAL ACTION NO. 2:10cr57**

MOHAMED ALI SAID,
a/k/a MAXAMAD CALI SACIID, *et al.*,

   **Defendants.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is the Joint Motion of Defendants to Dismiss Count One of the

Superseding Indictment pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure.

The Court held a hearing on this motion on July 29, 2010.  For the reasons stated herein, the

Defendants' Motion to Dismiss Count One is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

Defendants were named in a five-count Indictment on April 21, 2010. On July 7, 2010,

the Government filed an eight-count Superseding Indictment.  The Government alleges that on or

about April 10, 2010, around 5:00 a.m., Defendants approached the USS Ashland in a small skiff

in the Gulf of Aden.  As Defendants' skiff became even with the USS Ashland on the USS

Ashland's port side, at least one person on Defendants' skiff raised and shot a firearm at the USS

Ashland.  The USS Ashland responded by returning fire, destroying the skiff, and killing one of

the passengers.  At no time did Defendants board or attempt to board the USS Ashland.  The

USS Ashland crew members observed in the burning skiff, among other things, the remains of an

1

AK-47 style firearm.  Crew members of the USS Ashland then took Defendants into custody.

On June 9, 2010, Defendants filed the above-referenced motion.  The Government filed a response to this motion on June 21, 2010.  Defendants filed a reply on June 28, 2010.  A hearing was held on this matter on July 29, 2010.  All Defendants jointly move the Court to dismiss Count One of the Superseding Indictment, which alleges that Defendants "committed the crime of piracy as defined by the law of nations," in violation of 18 U.S.C. § 1651.  Defendants argue that the Count should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure because under no set of facts was the offense of "piracy" committed where Defendants did not board or take control of the USS Ashland and did not obtain anything of value from it.  (Def.'s Mot. to Dismiss 1.) The Government argues in response that this motion should be denied because piracy has historically included different types of conduct and is not limited to the common law definition of robbery on land.  (Govt's Resp. 2.)  More specifically, the Government asserts that piracy, as defined by the law of nations, does not require the actual taking of property; rather, any unauthorized armed assault or directed violent act on the high seas is sufficient to constitute piracy.  (Govt's Resp. 2-3.)

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(2) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  Included in the motions that may be made before trial is "a motion alleging a defect in the indictment or information."  Fed. R. Crim. P. 12(b)(3).  A 12(b) motion is permissible only when "it involves a question of law rather than fact."  *United States v. Shabbir*, 64 F. Supp. 2d 479, 481 (D. Md. 1999) (citing *United States v. Nukida*, 8 F.3d 665, 669 (9th

Cir.1993) (internal citation omitted)).

To survive Defendants' Motion to Dismiss Count One, the indictment must allege that Defendants committed acts which, if proven, would sustain a violation of 18 U.S.C. § 1651. Title 18 U.S.C. § 1651 states, "[w]hoever, on the high seas, commits the crime of piracy as defined by the law of nations, and is afterwards brought into or found in the United States, shall be imprisoned for life." This statute was originally enacted in 1819, and as is the case with the current version, the 1819 version did not specifically identify what conduct constituted "piracy as defined by the law of nations."

Article I of the United States Constitution grants Congress the power to "define and punish piracies and felonies committed on the high seas, and offenses against the law of nations." U.S. CONST. ART. I § 8. Inherent in this grant is the understanding that a set of international laws separate from domestic United States law exists. *See Ex Parte Quirin*, 317 U.S. 1, 29-30 (1942). The "law of nations" refers to the body of law known as "customary international law." *See Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 154 (2d Cir. 2003). The courts considering the phraseology "law of nations," in the civil context have held that in determining what offenses violate the law of nations, "courts must proceed with extraordinary care and restraint," as there is no single, definitive source on what constitutes customary international law. *See Guinto v. Marcos*, 654 F. Supp. 276, 279 (S.D. Cal. 1986) (noting that "there is no universally accepted definition of this phrase"). Generally, one of the key determinations of what principles are a part of international law is that countries must universally abide by the principles out of a sense of legal obligation and mutual concern. *Flores*, 343 F.3d at 154 (citing *Filartiga v. Pena-Irala*, 630 F.2d 876, 888 (2d Cir. 1980) ("customary international law includes only well established,

3

universally recognized norms of international law")).  Moreover, for a particular rule to be a part

of customary law in the international community, courts must look first to concrete evidence of

the customs and practices of the countries through formal laws and judicial actions, and second

to the work of scholars.  *Flores*, 343 F.3d at 156.  Thus, the myriad of decisions upon which the

Court must rely must be unambiguous and clear to give rise to a rule of customary international

law under the law of nations.  *Id.*

Despite its reference to international law, piracy under the law of nations in § 1651, as

with every other criminal statute in the United States criminal code, is subject to the

constitutional rigors of due process.   At a minimum, constitutional due process requires fair

warning of the charged conduct.  *See United States v. Hassan*, 542 F.3d 968, 978 (2d Cir. 2008).

Accordingly, the principle of due process is "that no man shall be held criminally responsible for

conduct which he could not reasonably understand to be proscribed."  *Bouie v. City of Columbia*,

378 U.S. 347, 351 (1964) (quoting *United State v. Harriss*, 347 U.S. 612, 617 (1954)).  This "fair

warning requirement" bars enforcement of "a statute which either forbids or requires the doing of

an act in terms so vague that men of common intelligence must necessarily guess at its meaning

and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (quoting

*Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).

Furthermore, as a corollary point to the vagueness doctrine, "the cannon of strict

construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity

in a criminal statute as to apply it only to conduct clearly covered."  *Lanier*, 520 U.S. at 266.

Finally, due process bars courts from setting forth a "novel" construction of a criminal statute "to

conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its

scope." *Id.*

## III. DISCUSSION

For the first time since 1820, this Court is faced with the task of interpreting the piracy statute, 18 U.S.C.§ 1651, as it applies to alleged conduct in international waters. As detailed above, Defendants contend that Count One should be dismissed because it is undisputed that Defendants did not board, take control, or otherwise rob the USS Ashland; therefore, under no set of facts did Defendants commit the offense of "piracy" as defined by the United States Supreme Court ("Supreme Court") in *United States v. Smith*, 18 U.S. 153, 5 Wheat. 153 (1820) (Story, J.). Relying in part on contemporary international law, the Government's argument is essentially two-fold: (1) the definition of "piracy, defined by the law of nations" includes, and has always included, *any* unauthorized violent acts or attacks committed on the high seas without lawful authority against another ship; and (2) this definition of piracy faces no constitutional vagueness issues because it is sufficiently defined to provide Defendants with reasonable notice. The Court will consider these arguments in turn.

### A. *Smith* is the Definitive  Authority on the Definition of Piracy Under Title 18 U.S.C. § 1651.

The Court must interpret a statute by its ordinary meaning at the time of its enactment. *Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 275 (1994) ("Courts interpret Congress' use of a term in light of its history, and presume Congress intended the phrase to have the meaning generally accepted in the legal community at the time of its enactment"); *see Norfolk S. Ry. Co. v. Bhd. of Locomotive Eng'rs*, 217 F.3d 181, 188-89 (4th Cir. 2000) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998) ("We attempt to infer how the . . .

Congress [at the time of enactment] would have addressed the issue.")). This rule applies

whether the statute at issue is criminal or civil. *See United States v. Cardenas*, 864 F.2d 1528,

1535 (10th Cir. 1989) (noting that "there is no evidence in the language of [the criminal statute at

issue] or its legislative history that Congress intended the word . . . to have a different meaning

than the legal meaning in 1968," the year the statute was enacted).  This Court must therefore

determine what Congress meant by piracy as defined by the law of nations, as stated in § 1651 at

its 1819 enactment.

### 1. *Smith* Defines Piracy as Sea Robbery.

Since the statutory language of § 1651 is devoid of any guidance on the scope of piracy

under the law of nations, the Court must examine any relevant judicial opinions to answer this

question.  The Supreme Court addressed the issue of § 1651's scope in *Smith*.  In fact, *Smith* is

the only case to ever directly examine the definition of piracy under § 1651.   In *Smith*, the

Government indicted the defendant for piracy under the 1819 version of § 1651.[1]  The special

verdict of the jury found that the defendant was guilty of the plunder and robbery charged in the

indictment.  On appeal, the circuit court divided on the question of whether piracy as defined by

the law of nations included the defendant's conduct, or whether the term piracy lacked a precise

meaning.  The Supreme Court found that piracy, under the law of nations, was robbery on the sea

and that it was sufficiently and constitutionally defined.  18 U.S. at 162.  Justice Story, for the

Court, wrote that "whatever may be the diversity of definitions, all writers concur, in holding,

---

[1] *See* Act to Protect the Commerce of the United States and Punish the Crime of Piracy, ch. 77, sec. 5, 3 Stat. 511 (1819).  The 1819 statute stated, "if any person or persons whatsoever, shall, on the high seas, commit the crime of piracy, as defined by the law of nations, and such offender or offenders, shall afterwards be brought into or found in the United States, every such offender or offenders shall, upon conviction thereof, before the circuit court of the United States for the district into which he or they may be brought, or in which he or they shall be found, be punished with death."

that robbery or forcible depredations, *animo furandi*, upon the sea . . . is piracy . . . [W]hether we advert to writers on the common law or the maritime law, or the law of nations, we shall find that they universally treat piracy as an offense against the law of nations, and that its true definition by that law is robbery upon the sea." *Id.* at 161-62.

The Government, nevertheless, seeks to distinguish and diminish the precedential significance of *Smith*. The first contention is that *Smith* did not address what other acts besides robbery or forcible depredations may constitute piracy because the facts of that case were specifically limited to an incident of robbery. (Govt.'s Resp. 6-7.) However, this Court finds that the discernable definition of piracy as "robbery or forcible depredations committed on the high seas" under § 1651 has remained consistent and has reached a level of concrete consensus in United States law since its pronouncement in 1820. *See Taveras v. Taveras*, 477 F.3d 767, 772 n.2 (6th Cir. 2007) (quoting Blackstone and noting that "a fundamental element of piracy is that the acts of robbery or depredation must have been committed upon the high seas"); *United States v. Madera-Lopez*, 190 Fed. Appx. 832, 836 (11th Cir. 2006) (citing *Smith* for the declaration that "piracy, by the law of nations, is robbery upon the sea, and that it is sufficiently and constitutionally defined"); *United States v. Barnhart*, 22 F. 285, 288 (C.C.D. Or. 1884) (noting that "[p]iracy, or robbing on the on the high seas, is a violation of this common or universal law"); *United States v. Baker*, 24 F. Cas. 962, 965 (C.C.S.D.N.Y. 1861) (noting the in charge to a jury that "pirates, according to the law of nations, have always been compared to robbers; the only difference being that the sea is the theatre of operations of one and the land of the other"); *United States v. Libellants & Claimants of the Schooner Amistad*, 40 U.S. 518, 586 (1841) (citing *Smith* in holding that "[p]iracy is an offense defined and ascertained by the law of nations;

7

it is 'forcible depredation on the sea, *amino furandi*,' or robbery"); *Davidson v. Seal-Skins*, 7 F.

Cas. 192, 193-94 (C.C.D. Conn. 1835) ("A pirate is one who acts solely on his own authority,

without any commission or authority from a sovereign state, seizing by force, and appropriating

to himself, without discrimination, every vessel he meets with; and hence pirates have always

been compared to robbers."); *United States v. Furlong*, 18 U.S. 184, 197 (1820) (defining piracy

as robbery committed on the seas).

   Moreover, the cases the Government cites do not provide concrete examples of § 1651

being expanded beyond the definition laid out in *Smith*. For instance, in *Harmony v. United

States*, 43 U.S. 210, 2 How. 210 (1844),[2] Justice Story considered whether the actual taking away

of property was necessary as an element of the crime of piracy in a civil forfeiture case. The

Court rejected the idea that in order for actions to be considered "piratical," it must be done with

intent to steal or plunder. *Id.* at 232. Notably, however, this case was a *civil forfeiture* action

under section 4 of the Piracy Act of 1819 as opposed to a *criminal sanction* under section 5 of the

Act. Under section 4, "piratical aggression" included acts of violence other than robbery,

forcible depredation or otherwise taking of a vessel.

   Furthermore, the Court stated that "[t]he word 'piratical' in the act is not to be limited in

its construction to such acts as by the laws of nations are denominated piracy." *Id.* at 210. In

other words, "piracy" has a much narrower meaning than "piratical" acts. Other courts have also

made this distinction between piracy and mere piratical undertakings. For example, in *The

Ambrose Light*, 25 F. 408, 415 (S.D.N.Y. 1885), another civil forfeiture case, the Court

distinguished piracy from mere "piratical undertakings." The Court stated, "[c]ondemnation of

---

[2] The Government refers to this case as "The Malek Adhel." (Govt's Resp. 10.)

the vessel as piratical does not necessarily imply a criminal liability of her officers or crew.  The vessel might be condemned for being engaged upon a piratical expedition only, or for attempts at piratical aggression or restraint.  In such a case no indictment for piracy would lie . . . and our statutes do not make criminally punishable piratical undertakings or aggressions merely."  *Id.*

In *The Chapman*, 5 F. Cas. 471, 473 (N.D. Cal. 1864), which the Government also cites, the court described another civil forfeiture provision that was enacted in 1861.  The Court stated that the offenses of "aggression, search, restraint, depredation or seizure" referred to in the provision would be "deemed piratical under the laws of nations."  The statutes referenced in *The Chapman* are now codified at 33 U.S.C. §§ 384 and 385.  The *Chapman* court also stated that "general piracy" includes "any act which denotes . . . universal hostility . . . . Not only an actual robbery, therefore, but cruising on the high seas without commission, and with intent to rob."  *Id.* at 474.  However, it is unclear if this language is mere dicta, because in a later part of the opinion, the court contradicts itself by stating that "[a]ll agree that piracy, under the laws of nations, is the offense of depredating on the seas without authority or commission from any sovereign or belligerent state," *i.e.*, sea robbery.  *Id.* at 475.  Therefore, this case provides the Government weak authority for the expansive definition of piracy it urges.

Finally, the Government also relies on *United States v. Shi*, 525 F.3d 709, 721 (9th Cir. 2008), also a non-§ 1651 case, to support its expansive reading of piracy under § 1651.  In *Shi*, the Ninth Circuit determined that because the defendant's offenses involved interference with property on the open sea through the use of force, they were within Congress' overall authority to define and punish crimes of piracy under Article I, Section 8 of the Constitution.  *Id.*  Therefore, the District Court had jurisdiction to find the defendant guilty of 18 U.S.C. §§ 2280(1)(1)(A) and

(a)(1)(B). *Id.* The Ninth Circuit noted that these provisions "proscribed offenses which meet the definition of piracy." *Id.* However, this Court finds the Government's argument that this case confirms the inclusion of all unauthorized acts of violence in the definition of piracy under § 1651 unavailing. Notably, the Ninth Circuit also stated that piracy has "traditionally been defined as robbery at sea." *Id.* (citing *Smith*, 18 U.S. at 161). The Court reads the Ninth Circuit's reference to "piracy" in discussing §§ 2280(1)(1)(A) and (a)(1)(B) as a general statement of Congress' authority to punish crimes that fall under the umbrella of "Piracies and Felonies on the High Seas." This reading makes sense considering the fact that the defendant in the *Shi* case was contending that the district court lacked jurisdiction over him because the crime occurred outside United States territory. *Id.* at 720.

### 2. The Term "Forcible Depredations" Does Not Include *Any* Unauthorized Acts of Violence.

Secondly, the Government argues that even if *Smith* and subsequent case law defined piracy as "robbery or forcible depredations," this definition includes "a variety of offense conduct," including Defendants' alleged acts of attacking the USS Ashland with an AK-47 rifle. (Hrg. Tr. 45.) It asserts that "forcible depredations" is not specific to any criminal offense. (Hrg. Tr. 58.) However, it is clear to the Court that this argument is without merit. The Government's interpretation of the phrase "forcible depredations" as something other than robbery or plunder is contrary to the unambiguous definition of "depredation." *See* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining depredation as "the act of plundering; pillaging"); *Deal v. United States*, 274 U.S. 277, 283 (1927) (defining depredation as "the act of plundering; a robbing; a pillaging") (internal quotations omitted). This definition does not include acts of assault or aggression, and

10

Justice Story's use of the terms "robbery" and "forcible depredations" does not embrace the conduct charged against Defendants. Accordingly, the Government's argument is both an expansion and a misinterpretation of *Smith*, and it would be erroneous for the Court to agree with it.

In sum, the Government simply fails to cite to one case in United States jurisprudence in which the Defendant was criminally prosecuted for "piracy in violation of the law of nations," for conduct that fell short of robbery or seizure of a ship. Finding none, this Court concludes that the Supreme Court in *Smith* set forth the authoritative definition of piracy as robbery or forcible depredations on the high seas, *i.e.*, sea robbery.

### 3. Subsequent Congressional Actions Support the *Smith* Definition of Piracy.

A review of the statutory history of § 1651 reveals that the definition espoused in *Smith* has remained unchanged. For instance, in the 1901 Report to the Commission to Revise and Codify the Criminal and Penal Laws of the United States, the Commission noted that the definition of "piracy by the law of nations is: A robbery or forcible depredation on the high seas, without lawful authority, done *amino furandi*, in the spirit and intention of universal hostility." Alex C. Botkin *et al.*, PENAL CODE OF THE UNITED STATES: REPORT OF THE COMMISSION TO REVISE AND CODIFY THE CRIMINAL AND PENAL LAWS OF THE UNITED STATES XXVII (1901). This Commission, led by Alex C. Botkin, David K. Watson, and WM D. Bynum, was appointed by the President, with the advice and consent of the Senate, to revise and codify the criminal and penal laws. The purpose of the report was to indicate any proposed changes in the substance of existing law before the 1909 recodification of the criminal code. Thus, by 1901, the Commission determined that "piracy" meant the same thing as it did in 1820, as stated by Justice Story in

11

*Smith*. Although this report is not a direct Congressional enactment or proclamation, it is certainly persuasive evidence of the commonly regarded viewpoint of the statute's meaning of piracy.

Furthermore, in 1948, Congress comprehensively revised all of Title 18 of the United States Criminal Code. *See* Act of June 25, 1948, ch. c. 645, 62 Stat. 774 (1948). However, § 1651 was not substantively updated. Indeed, the only substantive change to § 1651 since its enactment has been the removal of the death penalty for the offense as opposed to the current penalty of life imprisonment. *See* Piracy And Other Offenses Upon The Seas, ch. 321, sec. 290, 35 Stat. 1145 (1909).

The analysis does not end here. The Court discerns further support for the limitation of piracy in § 1651 to robbery or forcible depredations by reviewing § 1659 of Title 18, in which Congress explicitly provided that "[w]hoever, upon the high seas or other waters within the admiralty and maritime jurisdiction of the United States, by surprise, or open force, maliciously attacks or sets upon any vessel belonging to another, with an intent unlawfully to plunder the same . . . shall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 1659. The Government contends that it is common for criminal statutes in the Federal Criminal Code to overlap in proscribing penalties for certain conduct and that §§ 1651 and 1659 can be read together. *See Pasquantino v. United States*, 544 U.S. 349, 359 n.4 (2005) ("The mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either."). However, another rule of statutory interpretation is that statutes dealing with similar subject matter must be construed harmoniously "as to allow both to stand and give force and effect to each." *Orquera v. Ashcroft*, 357 F.3d 413, 422 (4th Cir. 2003). Section 1659 was

enacted in 1825. When enacting new statutes, Congress is considered to have been aware of prior sections or statutes addressing similar issues such that one is not essentially obliterated by the enactment of another. *United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) ("It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute"); *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

Accordingly, two sections in the same chapter of the criminal code should not be construed such that one is made completely superfluous. Section 1659 clearly addresses exactly the conduct charged against Defendants in this case of shooting at the USS Ashland with an AK-47 rifle. *See Daeche v. United States*, 250 F. 566, 571 (2d Cir. 1918) (holding that Defendant could be held liable for conspiring to attack and plunder a vessel based on evidence of a plan to destroy Allied ammunition ships, even though that plan was unsuccessful). Furthermore, the Court must consider the far-reaching consequence of the Government's interpretation of §§ 1651 and 1659. The Government concedes that an act as minor as a slingshot assault, a bow and arrow, or even throwing a rock at a vessel could be considered an act of violence and subject a defendant to the penalty of life in prison for piracy under §1651. (Hrg. Tr. 60.) This surely is not a logical interpretation of Congressional intent in enacting § 1651, especially in light of the ten year imprisonment penalty Congress promulgated for a violation of §1659.

**B. Contemporary International Law is Inappropriate to Define Piracy Under Title 18 U.S.C. § 1651.**

Despite the Supreme Court's holding in *Smith* that piracy as defined by the law of nations

in §1651 is sea robbery, to support its expansive definition of piracy, the Government urges the
Court to consider contemporary international law sources. (Govt's Resp. 15.) It points to the
International Maritime Bureau, the British Privy Council, the 1958 Geneva Convention, the 1982
United Nations Convention on the High Seas, and certain published treatises by a German law
professor as secondary authorities. (Govt's Resp. 15-19.) Defendants argue that Congress
defined the offense in 1819, and to the extent that piracy has changed in the international
community since *Smith*, it has only become more clouded with the emergence of new
international bodies; thus, the only consistent standard is the one set forth in *Smith*. (Def.'s
Reply 15-16.)

### 1. Contemporary International Law is Unsettled on the Definition of Piracy.

In order to determine whether a particular rule is a part of customary law in the
international community, courts must consider concrete evidence of the customs and practices of
the States through not only formal laws and scholarly work, but also controlling judicial actions.
*See Flores*, 343 F.3d at 156. Consequently, as the Government conceded during oral argument,
the Court can and should look to judicial opinions such as *Smith* that recognize and enforce the
law at hand. (Hrg. Tr. 56.) However, the Court finds that despite the fact that the crime of piracy
is generally recognized in the international community, *Smith* is the only clear, undisputed
precedent that interprets the statute at issue. The international sources the Government provides
are unsettled.

The first foreign source the Government points to is the British Privy Council. The
British Judicial Committee of the Privy Council is the independent court of final appeal for

14

Commonwealth countries.[3]  In 1934, the Privy Council considered whether actual robbery was an

essential element of the crime of "piracy *jure gentium*," or whether an attempt to commit

piratical robbery was also considered piracy. *In re Piracy Jure Gentium*, [1934] A.C. 586 (P.C.)

586.  The Privy Council held that a completed act of actual robbery was not an essential element

of piracy, but rather an attack alone was sufficient under the law of nations. *Id.* at 587-88.

Similarly, the 1958 Geneva Convention on the High Seas and Article 101 of the 1982 United

Nations Convention on the Law of Sea ("UNCLOS") both define piracy to include the conduct

charged against Defendants in this case.  Specifically, both conventions noted that "any illegal

acts of violence or detention, or any act of depredation, committed for private ends by the crew or

passengers of a private ship . . . on the high seas, against another ship . . . or against persons or

property on board such ship" on constitute piracy, and that the intention to rob or the act of

robbing were not required.[4]

Finally, in his treatise on International Law, Professor Oppenheim states that "[p]iracy, in

its original and strict meaning, is every unauthorized act of violence committed by a private

vessel on the Open Sea against another vessel with intent to plunder."  Oppenheim,

INTERNATIONAL LAW, § 276, 325 (1905).  Furthermore, Oppenheim notes that "[t]he act of

violence need not be consummated: a mere attempt, such as attacking or even chasing a vessel

---

[3] The Government notes that the Judicial Committee of the Privy Council was formally established by the Judicial Committee Act of 1833, and since then it has operated as an independent court of law. (Govt's Resp. 14 (citing Roget V. Bryan, *Toward the Development of a Caribbean Jurisprudence: The Case for Establishing a Caribbean Court of Appeal*, 7 J. TRANSNAT'L L. & POL'Y 181, 183 (1998)).

[4] *See* Convention on the High Seas, Sept. 15, 1958, art. 15, 13 U.S.T. 2312, 2317, 450 U.N.T.A. 11, 90 (*available at* http://untreaty.un.org/ilc/texts/instruments/english/conventions/8_1_1958_high_seas.pdf); Convention on the Law of the Sea, Dec. 10, 1982, art. 101, 1833 U.N.T.S. 3, 436 (*available at* http://www.un.org/Depts/los/convention_agreements/texts/unclos_e.pdf).

for the purpose of attack, by itself comprises piracy." *Id.*

Despite the declarations by these international bodies, scholars nevertheless disagree on whether there is an authoritative definition of piracy in the international community. *See* Helmut Turek, *The Resurgence of Piracy: A Phenomenon of Modern Times*, 17 U. MIAMI INT'L & COMP. L. REV. 1, 10 (2009) ("Under customary international law, there is no authoritative definition of piracy"); George D. Gabel, Jr., *Smother Seas Ahead: The Draft Guidelines as an International Solution to Modern-Day Piracy*, 81 TUL. L. REV. 1433, 1434-35 (2007) (noting that customary international law provides no authoritative definition of "piracy"); Barry H. Dubner, *Piracy in Contemporary National and International Law*, 21 CAL. W. INT'L L.J. 139, 142 (1990) (doubting that "an international agreement, be it in the form of convention, treaty, protocol, or exchange of notes, could be agreed upon regarding a modern definition of piracy [because] the views are just too divergent on the subject"); ALFRED P. RUBIN, THE LAW OF PIRACY 344 (Hotei 1988) ("It may be concluded that both in current practice and in current theory built upon ancient roots and the evolution of the international political and legal orders, there is no public international law defining 'piracy;' that the only legal definitions of 'piracy' exist in municipal law and are applicable only in municipal tribunals bound to apply that law.").

In fact, a number of scholars define piracy just as Justice Story did in the *Smith* decision. *See* Eugene Kontorovich, *The Piracy Analogy: Modern Universal Jurisdiction's Hollow Foundation*, 45 HARV. INT'L L.J. 183, 237 (2004) ("The crime of piracy consists of nothing more than robbery at sea"); Jay S. Bybee, *Insuring Domestic Tranquility: Lopez, Federalization of Crime, and the Forgotten Role of the Domestic Violence Clause*, 66 GEO. WASH. L. REV. 1, 26 (1997) ("Piracy is well defined by the law of nations as robbery on the sea"). Moreover, in

contrast to the British Privy Council, Geneva Convention and UNCLOS, the International

Maritime Bureau, the anti-crime arm of the International Chamber of Commerce, defines piracy

as "an act of boarding (or attempted boarding) any vessel with the apparent intent to commit theft

or any other crime with the apparent intent or capacity to use force in furtherance of that act."

(Govt's Resp. 19) (quoting PETER CHALK, THE MARITIME DIMENSION OF INTERNATIONAL

SECURITY: TERRORISM, PIRACY, AND CHALLENGES FOR THE UNITED STATES 3 (Rand 2008)).

This definition is much narrower than that set forth by the UNCLOS, the Geneva Convention and

the British Privy Council, and is arguably more in line with Justice Story's definition of sea

robbery.

        Indeed, following any of these international sources as authoritative is questionable.  The

International Maritime Bureau does not have the authority to create binding laws, and neither an

international maritime peacekeeping force nor an international tribunal with jurisdiction to try or

punish pirates exists.  Furthermore, "in developing the Harvard Research Draft Convention for

the law of Piracy (from which a majority of the definition of piracy for the UNCLOS was

derived), the reporters flatly stated, '[t]here is no authoritative definition,'" and there was plenty

of debate as to whether the definition in the UNCLOS "adequately and accurately codified

piracy."  Joshua Michael Goodwin, *Universal Jurisdiction and the Pirate: Time for an Old

Couple to Part*, 39 VAND. J. TRANSNAT'L L. 973, 999 (2006) (internal citations omitted).  And

while most countries have ratified the UNCLOS, the United States has chosen not to ratify it.

        Additionally, there is no single court that can bring order to various interpretations of the

UNCLOS.  Rather, enforcement actions against pirates and criminal prosecutions of pirates are

left to individual countries, many of which have different penalties for the crime of piracy

17

ranging from three years to life in prison.[5]  As one scholar notes, "to claim that there is a

common definition may be correct in the sense that there is a definition of piracy in the

UNCLOS, but the *interpretation* of that definition can potentially vary greatly between the

states."  *Id.* at 1000. (emphasis added).  Accordingly, the Court's reliance solely on the

international sources would be erroneous.

### 2.  Due Process Constraints Prevent a Novel Construction of Title 18 U.S.C. § 1651.

Most importantly, § 1651, as every other criminal statute under United States Criminal

Code, is subject to the constitutional rigors of due process. *See United States v. Sun*, 278 F.3d

302, 309 (4th Cir. 2002).  There is nothing special about § 1651 such that it should not receive

the same scrutiny.  If the Court only relied on the Government's international sources—as they

stand at this point in time—in formulating the definition of piracy under the law of nations, it

could hold that the charged conduct in this case is sufficient to withstand a Motion to Dismiss

because Defendants' acts are included as piracy in the range of conduct these various

international bodies proscribe.  However, following this line of reasoning would be contrary to

Supreme Court precedent, and would inevitably deny Defendants due process.

The *Smith* Court held that § 1651 was not unconstitutionally vague because piracy under

the law of nations had a specified meaning: robbery at sea.  18 U.S. at 162.  If the Court accepted

the Government's request to adopt the definition of piracy from these debatable international

---

[5] "In Russia, piracy is punished with a prison sentence of five to ten years if there are no weapons involved, eight to twelve years if a weapon is involved, and ten to fifteen years if an organized group commits it or death results from it . . . In Mexico, the punishment is imprisonment for fifteen to thirty years.  Argentina, on the other hand, punishes piracy with imprisonment for three to fifteen years, or fifteen to twenty-five years if death occurs during the commission of the piracy.  These are but a few examples, but they show that not everyone views piracy to be equally heinous.  Most do not even view piracy as the most heinous crime." Goodwin, *supra*, at 997-98.

sources whose promulgations evolve over time, defendants in United States courts would be required to constantly guess whether their conduct is proscribed by § 1651. This would render the statute unconstitutionally vague. *See Ladner v. United States*, 358 U.S. 169, 178 (1958) ("[T]he Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended"); *United States v. Wiltberger*, 18 U.S. 76, 105, 5 Wheat. 76 (1820) ("[P]robability is not a guide which a court, in construing a penal statute, can safely take").[6]

The Court concludes that the definition of piracy in the international community is unclear and not consistent with Congress' understanding of §1651 as recognized by the Supreme Court. *See Lanier*, 520 U.S. at 266 (noting that due process bars courts from setting forth a "novel" construction of a criminal statute "to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope"); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 728 (2004) (in construing the Alien Tort Statute, 28 U.S.C. § 1350, holding that courts "have no congressional mandate to seek out and define new and debatable violations of the law of nations"). Given the flexible manner in which international sources treat the definition of piracy, and that these sources inherently conflict with Supreme Court precedent, the Court's reliance on these international sources as authoritative would not meet constitutional muster and must therefore be rejected. The *Smith* definition of piracy as sea robbery, on the other hand, is

---

[6] Alfred P. Rubin, a noted author on piracy law, writes that "[t]here are many other reasons in theory for denying the present day existence of an international law on 'piracy,' such as the general acknowledgment today that all criminal acts must be so defined by statute before they can be punished, *nulla crimen sine lege; nulla poena sine lege.* Thus, the very notion of there being an 'international crime' in the absence of a statute binding on the tribunal before which the accused is brought, is inconsistent with basic theory for those accepting the validity of the platitudinous rule." RUBIN, *supra*, at 343.

clear and authoritative.

## IV. CONCLUSION

The Court finds that the Government has failed to establish that any unauthorized acts of violence or aggression committed on the high seas constitutes piracy as defined by the law of nations in 18 U.S.C. § 1651. Following the Government's assertions would subject Defendants to an enormously broad standard under a novel construction of the statute that has never been applied under United States law, and would in fact be contrary to Supreme Court case law.

In the Superseding Indictment, the Government has recognized that Defendants' alleged conduct is proscribed by a variety of federal statutes. The Government has charged Defendants with: 18 U.S.C. § 1659, Attack to Plunder a Vessel, having a penalty of ten years imprisonment; 18 U.S.C. § 2291(a)(6), Acts of Violence Against Persons on a Vessel, having a penalty of twenty years imprisonment; 18 U.S.C. § 2291(a)(9), Conspiracy to Perform Acts of Violence Against Persons on a Vessel, having a penalty of twenty years imprisonment; 18 U.S.C. §§ 111(a)(1) and (b), Assault with a Dangerous Weapon on Federal Officers and Employees, having maximum penalties of eight and twenty five years; 18 U.S.C. § 924(o), Conspiracy Involving Firearm and a Crime of Violence, having a penalty of twenty years; and 18 U.S.C. § 924(c)(1)(A)(iii), Use of Firearm During a Crime of Violence, having a penalty of ten years. However, 18 U.S.C. § 1651 is not a statute under which Defendants' alleged conduct falls. Accordingly, Defendants' Motion to Dismiss Count I is **GRANTED**.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
August  /7  , 2010

Raymond A. Jackson
United States District Judge